UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BETH BLOOMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 09-11342-FDS |
| BECKER COLLEGE and EDMUND J. PARO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON
DEFENDANT BECKER COLLEGE'S MOTION TO DISMISS**

**SAYLOR, J.**

This is an action alleging sexual harassment of a college student by her coach. Plaintiff Beth Bloomer is a former student-athlete at Becker College in Worcester, Massachusetts. She alleges that her former equestrian coach, defendant Edmund Paro, made inappropriate sexual comments towards her, touched her in inappropriate ways, and engaged in other sexually harassing activities while she was on the equestrian team at Becker. The complaint names both Paro and Becker as defendants, and contains causes of action under both federal and state law. Pending before the Court is Becker's motion to dismiss the amended complaint. For the reasons that follow, the motion will be granted in part and denied in part.

**I.    Background**

The facts are presented as alleged by plaintiff in the complaint.

Beth Bloomer is a resident of Rhode Island. She enrolled as a freshman at Becker College in September 2007, when she was 19 years old. (Amend. Compl. ¶¶ 1, 6). She chose to attend

Becker because of its equine studies curriculum, in which she was enrolled. (*Id.* at ¶¶ 6, 7). As part of her course of study, she joined the equestrian team, which was coached by Edmund Paro. (*Id.* at ¶ 8). At the time that Bloomer was on the equestrian team, all of the students on the team were female. (*Id.* at ¶ 9). Paro was a 67-year-old male. (*Id.*).

Throughout the fall 2007 semester, Paro used sexual innuendo when instructing the team. For example, when instructing the team on what type of clothing they should wear in competition, he suggested shirts that would allow spectators a more explicit view of their breasts as they rode. (*Id.* at ¶ 12a). He also recommended that they wear "thong" style underwear, so that spectators would have a more explicit view of their buttocks. (*Id.* at ¶ 12b). He once told the team that he would like to see "that girl" naked, referring to second-year student and co-captain Lori Gendron. (*Id.* at ¶ 12c). He stated "wouldn't it be so hot if (all) could ride naked." (*Id.*).

Also throughout the same semester, Paro touched members of the team in a sexually suggestive manner. For example, in the presence of others, he pinched Gendron and others on the buttocks when they bent over to clean the horse barn. (*Id.* at ¶ 13a). He offered "physical therapy" to team members, including Bloomer. He massaged their backs to relieve sore shoulders with horse liniment (an anti-inflammatory cream) and placed his hand up the front of their shirts, touching their breasts. (*Id.* at ¶ 13b). He did this although he is not a licensed physical therapist. (*Id.*). Paro also tried to hold hands with team members, including Bloomer. (*Id.* at ¶ 13c).

Throughout that same semester, Paro took digital photographs of team members in awkward positions, sometimes posting them on the social networking website Facebook and stating "Now I have your butt on my camera." (*Id.* at ¶ 14).

As he engaged in this behavior, Paro constantly reminded team members that he decided

who would ride which horse and who would participate in competitions and enjoy other benefits of being on the equestrian team.  (*Id.* at ¶ 16).  He also exhibited favoritism when he gave particular team members horses to ride.

Bloomer was uncomfortable with Paro's behavior during the fall 2007 semester and with his coaching.  (*Id.* at ¶¶ 12c, 13c, 14).  Other members of the team were offended as well, and the two co-captains quit the team approximately two weeks into the semester.  (*Id.* at ¶ 15).

In October 2007, a complaint was filed with Becker alleging that Paro was sexually harassing members of the equestrian team.  (*Id.* at ¶ 17).

On November 23, 2007, Becker issued a "Final Warning" to Paro.  (*Id.* at ¶18).

From late September to early October 2007, Bloomer experienced difficulties with her dormitory roommate.  Her roommate would exclude her from their room when the roommate's boyfriend slept over.  (*Id.* at ¶ 20).

On October 1, 2007, Bloomer slept in her car because her roommate excluded her from their room.  (*Id.* at ¶ 21).  The next morning, Bloomer appeared at team practice looking disheveled.  When Paro inquired, Bloomer explained the situation to him.  (*Id.* at ¶ 22).  Paro offered to let her sleep in an extra room in his house.  (*Id.* at ¶ 23).  She accepted this offer on several occasions.  (*Id.*).

However, sleeping at Paro's house made Bloomer uncomfortable because he would drink hard liquor in the evenings and offer it to her.  He would put the glass to her lips and tell her to relax and drink.  (*Id.*).  He said that if she wanted to ride in competitions, she would have to relax and drink.  (*Id.* at ¶ 24).  At the time, Bloomer was not yet 21 years old.  (*Id.* at ¶ 23).

When Bloomer slept in the extra room at Paro's house, he would try to hold her hand and

tell her she needed to trust him. (*Id.* at ¶ 25). He also touched her thighs and breasts. (*Id.*).

Bloomer complained to Dean Gina Zinno about the situation with her roommate. (*Id.* at ¶ 26). She was interviewed by Dean Zinno twice, but did not mention her problems with Paro. (*Id.*). After those interviews, she was interviewed by a male Becker staff member. (*Id.* at ¶ 27). During that interview, she "began to complain" about Paro, but was told that the school was investigating the October 2007 complaint and that she should come back later. (*Id.*).

Bloomer also complained about Paro to a teacher, Mr. Hoar, but he told her that he did not have the authority to help her. (*Id.* at 28).

On November 9, 2007, Bloomer stayed late at the Becker equestrian facility with Paro's permission. (*Id.* at ¶ 29). The facility is located several miles from the main campus and is not within walking distance. (*Id.*). Paro promised that he would return to give Bloomer a ride back to her dormitory. (*Id.*). All of the other members of the equestrian team had already left. (*Id.*). When Bloomer began to think that Paro was not coming, she called her father in Pawtucket, Rhode Island. (*Id.*). He began to make the hour-and-a-half drive to the facility to pick her up. (*Id.*). At around 11:30 pm, Paro arrived to pick Bloomer up. She called her father, who was halfway to Worcester, to tell him that she no longer needed a ride. (*Id.*). He turned around and returned to Pawtucket. (*Id.*).

When Paro arrived, Bloomer thought that he appeared drunk. (*Id.* at ¶ 30). He urged Bloomer into his car, but did not take her to her dormitory, as he had promised. (*Id.*). Instead, he drove her to his home. (*Id.*). When they arrived, he gave Bloomer alcoholic beverages and encouraged her to drink them. (*Id.*). He refused to take her home. (*Id.*). That night, he held her hand and touched her breasts and thighs. (*Id.*).

On November 30, 2007, Paro accompanied the equestrian team on an overnight trip to observe an equestrian competition in New Jersey. (*Id.* at ¶ 31). Bloomer and another teammate drove. (*Id.*). Paro rode in Bloomer's vehicle. (*Id.*).

When the team stayed overnight, Paro had a hotel room that was separate from members of the team. (*Id.* at ¶ 32). However, he forced and coerced Bloomer into his hotel room by claiming that she required extra supervision because he had heard she had begun cutting herself. (*Id.*). In fact, Bloomer had begun cutting herself because she felt stressed by Paro's behavior. (*Id.* at ¶ 33). Once they were in his hotel room, Paro provided Bloomer with alcoholic beverages and encouraged her to drink them. (*Id.* at ¶ 32). He forced her onto his hotel bed and touched her breasts and thighs. (*Id.*).

Bloomer later attempted to complain about Paro to Kristen Garvey, but she was told to make her complaint after the semester break. (*Id.* at ¶ 34).[1]

During the semester break, Paro sent Bloomer numerous text messages, urging her to return to Becker and offering her the use of the extra room in his house. (*Id.* at ¶ 36).

Plaintiff withdrew from Becker in January 2008. (*Id.* at ¶ 37). She has suffered psychic and emotional injuries, accompanied by physical symptoms, for which she has sought professional treatment. (*Id.* at ¶ 35).

On August 12, 2008, Bloomer filed a charge with the Massachusetts Commission Against Discrimination ("MCAD"), alleging violations of Mass. Gen. Laws. ch. 151C by Paro and Becker. MCAD dismissed the charge on June 29, 2009, finding that Bloomer had failed to file the charge

---

[1] Although she is not specifically identified in the complaint, it can be reasonably inferred from the complaint that Garvey is a member of Becker's staff.

within the six-month limitations period.

Bloomer brought this action on August 11, 2009. Defendants filed a joint motion to dismiss the complaint on October 13, 2009. In response, Bloomer filed an amended complaint on October 26, 2009, voluntarily dismissing 17 of her initial claims.

## II.     Legal Standard

Defendant Becker has moved to dismiss all counts of the amended complaint for failure to state a claim under Rule 12(b)(6). On a 12(b)(6) motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Becker has also moved to dismiss Counts 3 and 4 for lack of subject matter jurisdiction under Rule 12(b)(1).

### III.  Analysis

#### A.  Counts 1 and 2 – Title IX

Counts 1 and 2 allege that Becker violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), through deliberate indifference to a hostile educational environment (Count 1) and *quid pro quo* sexual harassment (Count 2) created by an employee.[2] Becker contends these counts should be dismissed because plaintiff has not alleged that it had actual knowledge of her sexual harassment or that there was *quid pro quo* harassment.

##### 1.  Actual Knowledge of Sexual Harassment

In order to succeed under a Title IX claim, a plaintiff must show that a school official authorized to take corrective action had "actual knowledge" of the sexual harassment and either failed to act or exhibited deliberate indifference to it. *See Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998); *Frazier v. Fairhaven School Comm.*, 276 F.3d 52, 66 (1st Cir. 2002); *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 164-65 (D. Mass. 2005). Becker interprets this to mean that plaintiff must show that it had actual knowledge of sexual harassment by Paro *toward plaintiff*.[3] It contends that plaintiff has therefore failed to satisfy the requisite

---

[2] 20 U.S.C. § 1681 (a) provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

The Supreme Court has recognized an implied right of action for money damages in Title IX cases of intentional sexual discrimination and has held that a teacher's sexual harassment of a student constitutes actionable discrimination. *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75-76 (1992).

[3] The case law cited by Becker in support of its interpretation is not persuasive. In *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 66, 67 (1st Cir. 2002), the complaint was dismissed because plaintiff failed to allege that the harassment was based on gender, not because of lack of actual notice. In *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 166 (D. Mass. 2005), the court granted summary judgment in favor of a school district on a student's Title IX claim because complaints by other students did not put the school district on notice that the teacher "was

element of actual knowledge because plaintiff did not report the sexual harassment to anyone with authority to take corrective action.[4]

The majority of courts that have considered the scope of the "actual knowledge" requirement have concluded that "'actual knowledge of discrimination' can take the form of knowledge about the alleged harasser's conduct towards others which indicates some degree of risk that the harasser would subject the plaintiff to similar treatment." *Brodeur v. Claremont School Dist.*, 626 F. Supp. 2d 195, 208 (D.N.H. 2009); *see, e.g., Williams v. Bd. of Regents*, 477 F.3d 1282, 1295-96 (11th Cir. 2007); *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004); *J.K. v. Ariz. Bd. of Regents*, No. 06-916, 2008 WL 4446712, at *13-*14 (D. Ariz. Sept. 30, 2008); *Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d 679, 687-88 (W.D. Ky. 2003); *Hart v. Paint Valley Local Sch. Dist.*, No. 01-004, 2002 WL 31951264, at *6 (S.D. Ohio Nov. 15, 2002); *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 63 (D. Me. 1999). *But see Baynard v. Malone*, 268 F.3d 228, 238 (4th Cir. 2001) ("Title IX liability may be imposed only upon a showing that school district officials possessed actual knowledge of the discriminatory conduct in question."). In other words,

> the *Gebser* notice standard does not require that the offending instructor actually

---

subjecting female students to harassment severe enough to compromise the victim's educational opportunities," not because the court refused to consider these complaints. (internal quotations and ellipses omitted). In fact, the court considered the complaints of other students in evaluating the claim, which it presumably would not have done if they were irrelevant to establishing actual knowledge. *Id.* Finally, the plaintiffs in *White v. Gurnon*, 67 Mass. App. Ct. 622, 635 (2006), brought their complaint pursuant to 42 U.S.C. § 1983, not Title IX, and summary judgment was granted on the ground of qualified immunity, not because of lack of actual notice.

[4] Plaintiff complained to Dean Zinno about her roommate and problems with her resident advisor, but she did not raise the issue of Paro's alleged sexual harassment. (Am. Compl. ¶ 26). She "began to complain" to a male member of Becker's staff about Paro, but was told to come back. (*Id.* at ¶ 27). She also went to complain to Kristen Garvey, another staff member, but did not end up doing so. (*Id.* at ¶ 34). She also complained about Paro to a teacher, but he told her that he "did not have the authority to help her." (*Id.* at ¶ 28).

> commit previous acts of harassment against the plaintiff-student and that the plaintiff-student complain before the institution may be held liable for the instructor's subsequent repeated misconduct under Title IX . . . . [T]he actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to students based on prior complaints by other students.

*Johnson*, 267 F. Supp. 2d at 688. This Court agrees with the weight of authority that a plaintiff may show that an institution had "actual notice" by showing that the it was aware of complaints by other students regarding the same harassing employee.[5]

Here, plaintiff has sufficiently alleged that Becker officials with authority to take corrective action had actual notice of Paro's sexual harassment of female students on the equestrian team. Plaintiff alleges that in October 2007, a complaint was filed with Becker alleging that Paro was sexually harassing members of the equestrian team. (Amend. Compl. at ¶ 17). She further alleges that on November 23, 2007, Becker issued a "Final Warning" to Paro (suggesting, among other things, that he had received earlier warnings). (*Id.* at ¶18).

Plaintiff has also alleged that Becker exhibited deliberate indifference to her allegations of sexual harassment. In particular, she alleges that she attempted to complain about Paro to Dean Zinno's office, but was told to come back later because the other complaint was being investigated. (*Id.* at ¶19). Plaintiff also alleges that when she went to Kirsten Garvey to complain about Paro's behavior, she was told to come back after the semester break. (*Id.* at ¶¶ 29, 32, 34). Those allegations, taken together, are sufficient for purposes of Rule 12(b)(6) to allege that Becker had the requisite degree of knowledge. The complaint therefore states a claim for sexual

---

[5] In *Wills v. Brown University*, 184 F.3d 20 (1st Cir. 1999), evidence was admitted that the university knew, before the complained-of incident, that the professor had engaged in similar conduct toward another student. The First Circuit upheld the district court's ruling, observing that "evidence of an inadequate response is pertinent to show fault and causation where the plaintiff is claiming that she was harassed or continued to be harassed after the inadequate response." (*Id.*).

harassment under Title IX.

### 2. *Quid Pro Quo* Sexual Harassment

"To make out a prima facie case of quid pro quo harassment, under . . . Title IX, the plaintiff must show that (1) he or she was subject to unwelcome sexual advances by a supervisor or teacher and (2) that his or her reaction to these advances affected tangible aspects of his or her compensation, terms, conditions, or privileges of employment or educational training." *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 898 (1st Cir. 1988). The expectation on the part of the teacher that the student will submit to the unwelcome sexual advances in exchange for favorable treatment in an educational program may be explicit or implicit. *Morgan v. Massachusetts General Hospital*, 901 F.2d 186, 192 (1st Cir.1990).

Becker contends that Count 2 should be dismissed because plaintiff has failed to plead sufficient facts for a *quid pro quo* sexual harassment claim. A review of the complaint, however, shows that it contains sufficient allegations that her submission to Paro's unwelcome sexual advances were tied to her access to the privileges of participating on the equestrian team.

The complaint alleges that as Paro engaged in inappropriate behavior, he would continually reminded her and other teammates that he decided "who would ride which horse and who would participate in competitions and enjoy other benefits of the equestrian team." (Amend. Compl. at ¶ 16). It also alleges that he confirmed his power over the team by showing favoritism to two team members, to whom he gave (presumably desirable) horses. (*Id.*). A reasonable inference under the circumstances is that plaintiff had to tolerate Paro's ongoing harassment in order to receive the full benefits of membership on the equestrian team and the related educational benefits. For purposes of Rule 12(b)(6), that is sufficient to state a claim for *quid pro quo*

harassment.

For the foregoing reasons, the motion to dismiss Counts 1 and 2 will be denied.

### B.     Counts 3 and 4 – Mass. Gen. Laws ch. 151C

Counts 3 and 4 allege that Becker violated Mass. Gen. Laws. ch. 151C (the equivalent of Title IX under Massachusetts law) through its deliberate indifference to the hostile educational environment (Count 3) and *quid pro quo* sexual harassment (Count 4) by its employee.[6] Becker contends these counts should be dismissed because they are barred by the statute of limitations, because plaintiff has not shown that Becker had knowledge of the alleged misconduct, and because plaintiff has not established the requisite factual basis for a *quid pro quo* harassment claim.

#### 1.     Statute of Limitations

Becker contends that plaintiff's Chapter 151C claims should be dismissed because they were not filed with the Massachusetts Commission Against Discrimination within the relevant limitations period. Although the statutory framework is somewhat tangled, the claims are clearly

---

[6] Chapter 151C provides in relevant part:

> It shall be an unfair educational practice for an educational institution: . . . [t]o sexually harass students in any program or course of study in any educational institution.

Mass. Gen. Laws ch. 151C § 2(g).

> The term "sexual harassment" means any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:-- (i) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement services or as a basis for the evaluation of academic achievement; or (ii) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment.

Mass. Gen. Laws ch. 151C § 1(e).

timely.

Claims for sexual harassment in education under Chapter 151C are actionable in Superior Court pursuant to Mass. Gen. Laws. ch. 214, §1C. *See Morrison v. Northern Essex Community College*, 56 Mass. App. Ct. 784, 786 (2002). Chapter 214, §1C provides:

> A person shall have the right to be free from sexual harassment, as defined in chapter [151B] and [chapter 151C]. The superior court shall have the jurisdiction to enforce this right . . . . Any such action shall be commenced in the superior court within the time allowed by said section 9 of said chapter 151B. No claim under this section that is also actionable under chapter 151B or chapter 151C shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B.

Chapter 151B is the chapter that generally prohibits various forms of discrimination and provides various procedural remedies. The general limitations period set forth in ch. 151B, § 9 is three years. An administrative complaint under Chapter 151B must be filed with MCAD within 300 days. *See* Mass. Gen. Laws. ch. 151B, § 5 ("Any complaint filed pursuant to this section must be so filed within 300 days after the alleged act of discrimination."). Thus, plaintiff's administrative complaint, which was filed on August 12, 2008, was timely because it was filed within 300 days after all of the acts of discrimination alleged in the amended complaint. The complaint filed in this Court on August 11, 2009, was likewise timely, as it was filed within three years of the alleged acts.

Becker interprets the final sentence of ch. 214 §1C to require that the complaint be filed within the six-month limitations period established by Chapter 151C. As a matter of statutory construction, that position is incorrect. Furthermore, and in any event, even if ch. 214, §1C did not incorporate by reference the limitations period set forth in Chapter 151B, the limitations period set forth in Chapter 151C would not be applicable. The procedures set forth in ch. 151C,

§3, including the six-month limitations period, apply only to "person[s] seeking admission . . . to any educational institution, or enrolled . . . in a vocational training institution." Mass. Gen. Laws. ch. 151C, § 3(a).[7] Because plaintiff was neither a person seeking admission to an educational institution nor a student enrolled in a vocational training institution, that section does not apply.[8]

### 2. Knowledge of Misconduct

Becker contends that the "actual knowledge" standard of Title IX should apply to claims under Chapter 151C. It cites only one case in support of that contention, which expressly did not reach the issue. *See Morrison*, 56 Mass. App. Ct. at 795 n. 17 ("[w]e also do not address whether a Chapter 151C claim against an educational institution requires that its administrators have knowledge of harassment perpetuated by its coaches or teachers, a requirement imposed on claims under Title IX."). There is thus, apparently, no authority stating that knowledge of the misconduct is a necessary element for recovery under Chapter 151C. In any event, even if such a knowledge element is required, this element would likely be satisfied as to the Chapter 151C claims for the same reasons described above as to the Title IX claims.

### 3. *Quid Pro Quo* Sexual Harassment

---

[7] The Supreme Judicial Court has recognized that "the statute gives students who are sexually harassed in violation of G.L. c. 151C, § 2(g), access to the remedial provisions of G.L. c. 151B, § 9. General Laws c. 214, § 1C, thus extends to . . . students protection that is not otherwise available under G.L. c. 151B and c. 151C . . . ." *Lowery v. Klemm*, 446 Mass. 572, 578, 845 (2006) (citation omitted).

[8] Becker also asserts that if plaintiff disagreed with the MCAD's finding that her administrative claim was untimely, then her remedy was to appeal to the full MCAD. However, it provides no case law or statutory support for this proposition. Although the remedies provided by the administrative procedure were exclusive while the claim pending, no administrative procedure was pending after the finding of lack of jurisdiction on June 29. Although plaintiff could have pursued an administrative remedy by appealing that disposition, she was not required to do so.

Becker asserts the same arguments it made for dismissal of plaintiff's Title IX *quid pro quo* harassment claim in support of its motion to dismiss her Chapter 151C claim. However, for the reasons stated above, those arguments are without merit.

For the foregoing reasons, the motion to dismiss Counts 3 and 4 will be denied.

### C.     Counts 5 and 6 – Tort Claims

Count 5 asserts a claim for assault and battery alleging that Becker is vicariously liable for the tortious acts committed by Paro, its employee. Plaintiff alleges that "in driving [her] from the equestrian facility to his house, refusing to drive her home, and giving [her] alcoholic beverages to drink, [Paro] committed overt acts to put [her] in reasonable apprehension of immediate bodily harm." (Amend. Compl. ¶ 66). She also alleges that Paro committed other acts of assault and battery when he "forc[ed] [her] into his hotel room, providing her with alcoholic beverages to drink, and forcing [her] onto his hotel bed," and when he "sexually assault[ed] [her] by touching her breasts, hands, and thighs." (*Id.* at ¶¶ 67, 68).

Count 6 alleges that Becker is vicariously liable for a false imprisonment imposed on her by Paro. Specifically, plaintiff alleges that Paro falsely imprisoned her on November 9, 2007, by driving her from the equestrian facility to his house and refusing to drive her home, and also on November 30, 2007, when he forced her into his hotel room and onto his bed. (*Id.* at ¶¶ 75, 76).

In order to state a claim against Becker for torts allegedly committed by Paro, plaintiff must allege facts that, if proven, would establish that Paro was acting within the scope of his employment at the time he committed the torts. *See Kelly v. Middlesex Corp.*, 35 Mass. App. Ct. 30, 32 (1993). Paro's conduct is within the scope of his employment if (1) it is of the kind he is employed to perform, (2) it occurs substantially within the authorized time and space limits, and

(3) it is motivated, at least in part, by a purpose to serve the employer. *See Wang Laboratories, Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 859 (1986); *Richardson v. Northeast Hospital Corp.*, 71 Mass. App. Ct. 1116, at *1 (2008); *Kennedy v. U.S.*, 78 Fed. Appx. 721, 721-22 (1st Cir. 2003); *see also* Restatement (Second) of Agency §228(1).

Becker contends that plaintiff has failed to allege sufficient facts to establish that Paro was acting within the scope of his employment. In particular, it notes that the complaint does not specifically allege that the torts occurred during Paro's performance of his duties, during work hours, or on campus. Moreover, Becker asserts that "sexual assault of a student is prohibited by law and college policy and could *never* be in Becker's interest." (Def.'s Mem. at 9).

As to plaintiff's claim for assault and battery, the Court finds that the acts alleged could not have been committed within the scope of Paro's employment. The acts alleged—touching plaintiff's hands, thighs, and breasts—go far beyond the scope of Paro's employment duties. Becker hired Paro to coach its equestrian team. Presumably, some level of touching is involved in that task, but surely sexual contact is not required. Becker also had explicit prohibitions against sexual assault in place at the time that the alleged torts occurred. It therefore was clear that Becker did not endorse such action. Paro clearly engaged in the torts alleged for his own personal motives, and was not in any way motivated by a desire to serve Becker. *See Doe v. Purity Supreme, Inc.*, 422 Mass. 563 (1996) (finding that an assistant store manager's sexual assault of the plaintiff employee in the store itself was not within the scope of his employment); *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393 (1990) (finding that children's daycare employees who molested and raped several children were not acting within the scope of their employment at the time); *Nichols v. Land Transport Corp.*, 223 F.3d 21 (1st Cir. 2000)

(holding that trucking company was not liable for the acts of its employee when, after attempting to pass plaintiff several times, he attacked plaintiff at a red light with a cable and stabbed him). Therefore, plaintiff has not stated a plausible claim for assault and battery against Becker.

However, the claim for false imprisonment – viewed fairly, and with the benefit of the reasonable inferences to which plaintiff is entitled – is of a different nature. Plaintiff alleges that Paro took her to his home after she stayed late at the equestrian facility and would not let her leave. The complaint alleges that Paro knew of her ongoing issues with her roommate and the potential that she might sleep in her car. Plaintiff contends that Paro was therefore, at least in part, motivated to serve Becker's interest by ensuring that one of its students, and a member of its equestrian team, had a safe place to sleep. The complaint also alleges that, during an overnight trip with the equestrian team, Paro lured plaintiff into his hotel room and would not let her leave. The complaint alleges that Paro told plaintiff he wanted her to stay in his room because he was concerned about her cutting herself. It thus asserts that Paro was acting out of concern for her safety, and therefore arguably in Becker's interest.

In the context of a motion to dismiss, the Court must take all reasonable inferences in the light most favorable to plaintiff and deny the motion if her claim is plausible on its face. It is at least plausible that Paro was acting, at least in part, in Becker's interest when he allegedly falsely imprisoned plaintiff. Moreover, these acts occurred within the time and space parameters of his employment as Becker's equestrian coach. The allegations of false imprisonment set forth in the complaint are therefore sufficient to state a claim that Paro's acts were committed within the purview of his authority.

For the foregoing reasons, the motion to dismiss Count 5 will be granted. The motion to

dismiss Count 6 will be denied.

### D.     Counts 7 and 8 – Negligent Retention and Supervision

Counts 7 and 8 allege negligent retention and supervision of an employee by Becker that caused injury to plaintiff. Becker contends that these counts should be dismissed because plaintiff has not alleged facts showing that her damages were reasonably foreseeable.

To state a claim for negligent hiring and supervision, plaintiff must "allege that [the employer] knew, or should have known, that the offending employee had a proclivity to commit the complained-of acts, and that the employer nevertheless failed to take corrective action." *Vicarelli v. Business Int'l, Inc.*, 973 F. Supp. 241, 246-47 (D. Mass. 1997), citing *Forester v. The Loft, Inc.*, 26 Mass App. Ct. 289, 291 (1988). The complaint alleges that Becker was put on notice of Paro's sexual misconduct through an October 2007 complaint that was filed with the school. It also alleges that Becker issued Paro a "Final Warning," but did not limit his ability to accompany the team on overnight trips or otherwise restrict or monitor his activities. The amended complaint accordingly recites sufficient facts to support a claim that Becker had knowledge and failed to take corrective action. The motion to dismiss Counts 7 and 8 will therefore be denied.

### E.     Counts 9 – Breach of Contract

Count 9 alleges that Becker breached a contract with plaintiff by failing to provide an academic environment free from sexual harassment, assault and battery, and false imprisonment. Becker contends this count should be dismissed because plaintiff has not alleged the essential elements of a breach of contract claim.

It is true that contracts can arise from the student-college relationship. *See, e.g., Mangola*

*v. Brown University*, 135 F.3d 80, 83 (1st Cir. 1998) ("The student-college relationship is essentially contractual in nature. The terms of the contract may include statements provided in student manuals and registration materials") (internal citations omitted); *see also Guckenberger v. Boston University*, 957 F. Supp. 306, 317 (D. Mass. 1997) ("Universities are capable of forming legally cognizable contractual relationships with their students. Brochures, policy manuals, and other advertisements can form the basis of such contractual agreements."). The standard for interpreting the terms of any such contract is that of "reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." *Mangla*, 135 F.3d at 83; *see also Schaer v. Brandeis University*, 432 Mass. 474, 478 (2000).

The only allegation in the complaint that arguably goes toward the creation of a contract between Becker and plaintiff is that plaintiff decided to attend Becker because of its equestrian program. However, it was not the failure of this program that led to the harm that plaintiff has allegedly suffered. Although plaintiff alludes in her memorandum to "representations made to her and her parents" that she would receive a "top-notch equestrian education[,] enjoy the privilege of competing on the [e]questrian [t]eam by responsible and caring staff . . . [, and] not experience sex discrimination in her studies . . . .," there is nothing in the amended complaint to that affect.

Therefore, the amended complaint indeed fails to state a claim for breach of contract. Accordingly, the motion to dismiss Count 9 will be granted. However, plaintiff has requested that the Court grant her the opportunity to file a second amended complaint in order to cure the inadequacies in Count 9 of the first amended complaint. There having been no objection made by defendants, and in the interest of fairness, the Court will grant plaintiff leave to file a second amended complaint.

## IV. <u>Conclusion</u>

For the foregoing reasons, Becker College's motion to dismiss is GRANTED in part as to Counts 5 and 9, and is otherwise DENIED. Plaintiff may file a second amended complaint on or before September 3, 2010.

**So Ordered.**

Dated: August 13, 2010

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge